SLIP OP. 07 - 104

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| UNITED STATES,<br><br>        Plaintiff,<br><br>    v.<br><br>UPS CUSTOMHOUSE BROKERAGE, INC.,<br><br>        Defendant. | BEFORE: JUDGE GREGORY W. CARMAN<br><br>Court No. 04-00650 |

[Plaintiff's motion for summary judgment is denied.]

Peter D. Keisler, Assistant Attorney General, Jeanne E. Davidson, Director, Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Melinda D. Hart and Nancy Kim); Edward Greenwald, of counsel, Department of Homeland Security, U.S. Customs and Border Protection, for Plaintiff.

Akin, Gump, Strauss, Hauer & Feld, LLP (Lars-Erik A. Hjelm, Thomas J. McCarthy, Lisa W. Ross, and Tamir A. Soliman), for Defendant.

Grunfeld Desiderio Lebowitz Silverman & Klestadt, LLP (Joseph M. Spraragen), for Amicus (National Customs Brokers & Freight Forwarders Association of America, Inc.).

July 2, 2007

OPINION & ORDER

CARMAN, JUDGE: This matter is before this Court on Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion"). Defendant, UPS Customhouse Brokerage, Inc. ("UPS" or "Defendant"), filed a timely response, and Plaintiff, the United States ("Plaintiff" or "Customs"), filed a timely reply. The Court, having considered the parties' submissions and for the reasons that follow, denies Plaintiff's Motion.

United States v. UPS Customhouse Brokerage, Inc.                                                      Page 2
04-00650

## BACKGROUND

This Court has twice issued opinions concerning the instant litigation.  See United States v. UPS Customhouse Brokerage, Inc., 30 CIT __, 442 F. Supp. 2d 1290 (2006) (denying Defendant's motion for partial summary judgment and Plaintiff's motion to strike) ("UPS I"); United States v. UPS Customhouse Brokerage, Inc., 30 CIT __, 464 F. Supp. 2d 1364 (2006) (granting Defendant's motion to certify question).  This Court presumes familiarity with its earlier opinions but reiterates some facts for reference.

Defendant is an express consignment carrier[1] and a licensed customs broker responsible for preparing and filing customs entry documents on behalf of its clients.  (See First Am. Compl. ¶ 3; Answer ¶ 3; Plaintiff's Motion ("Pl.'s Mot.") 3; Def.'s Br. in Opp'n to Pl.'s Mot. for Summ. J. ("Def.'s Opp'n") 12.)  Some time ago, Customs identified an unacceptably low level of accuracy in customs brokers' use of Heading 8473 of the Harmonized Tariff Schedule of the United States ("HTSUS").[2]  (Pl.'s Statement of Material Facts Not in Dispute ("Pl.'s Stmt of Facts") ¶ 1; Def.'s Resp. to Pl.'s Statement of Material Facts Not in Dispute ("Def.'s Resp. to

---

[1]Customs regulations define an "express consignment carrier" as

> an entity operating in any mode or intermodally moving cargo by special express commercial service under closely integrated administrative control.  Its services are offered to the public under advertised, reliable timely delivery on a door-to-door basis.  An express consignment operator assumes liability to Customs for the articles in the same manner as if it is the sole carrier.

19 C.F.R. § 128.1(a) (2006).

[2]Plaintiff alleges that the discovery occurred in 1995.  (See Pl.'s Statement of Material Facts Not in Dispute ¶ 1.)  However, Defendant was not able to affirm this date (see Def.'s Resp. to Pl.'s Statement of Material Facts Not in Dispute ¶ 1), though it does recognize that this occurred in the "mid-1990's" (Def.'s Opp'n 5).

<u>United States v. UPS Customhouse Brokerage, Inc.</u>                                                Page 3
04-00650

Facts") ¶ 1.)  Customs was particularly concerned with low compliance rates for subheading 8473.30.9000.  (Pl.'s Mot. 3; Def.'s Opp'n 6; Pl.'s Stmt of Facts ¶ 3; Def.'s Resp. to Facts ¶ 3.)  Subheading 8473.30.9000 may be used to properly classify goods that are

> Parts and accessories . . . suitable for use solely or principally with machines of headings 8469 to 8472:
> > Parts and accessories of the machines of heading 8471[3]:
> > > Other [incorporating a cathode ray tube ("CRT")]
> > > > Other [than certain specified parts for printers].

HTSUS 8473.30.9000 (2000) (footnote added).  To be properly classified in subheading 8473.30.9000, the good must contain a CRT.

In an effort to improve broker compliance in the area of classification, specifically including subheading 8473.30.9000, Customs issued letters to and conducted training sessions for customs brokers, including UPS.  (Pl.'s Mot. 4; Def.'s Opp'n 6.)  Despite efforts by UPS to improve its compliance rates (Def.'s Opp'n 13-16; Pl.'s Mot. 5-7), Customs identified alleged continuing failures by UPS to properly classify goods in subheading 8473.30.9000.  Between 1998 and 2000, Customs issued UPS a number of Notices of Action and warning letters concerning its alleged misuse of the subheading.  (First. Am. Compl. ¶ 6; Answer ¶ 6.)  Subsequent alleged misclassifications resulted in five penalty notices, non-payment of which is the subject of this litigation.  (First. Am. Compl. ¶¶ 8-12.)

On July 11, 2000, Customs issued three pre-penalty notices, and on August 8, 2000, Customs issued two more pre-penalty notices for alleged violations of section 641 of the Tariff

---

[3]Heading 8471 is for "[a]utomatic data processing machines and units thereof; magnetic or optical readers, machines for transcribing data onto data media in coded form and machines for processing such data, not elsewhere specified or included."  HTSUS 8471 (2000).

Act of 1930, 19 U.S.C. § 1641 (2000)[4] ("the broker statute").[5] UPS I, 442 F. Supp. 2d at 1293.

On September 26, 2000, Customs issued three penalty notices to UPS for violations of the broker statute noticed in the July 11, 2000, pre-penalty notices. Id. On October 19, 2000, Customs issued an additional two penalty notices to UPS for violations of the broker statute noticed in the August 8, 2000, pre-penalty notices. Id. The July 11 and August 8, 2000, pre-penalty notices each alleged violations of the responsible supervision and control provision of the broker statute regarding the erroneous classification of merchandise entered between January 10 and May 10, 2000. Id.

UPS failed to remit the $75,000 in penalties imposed by the September 26 and October 19, 2000, penalty notices. On December 17, 2004, Plaintiff filed a timely complaint against UPS seeking to enforce the monetary penalties Customs imposed on Defendant.

## PARTIES' CONTENTIONS

### I.     Plaintiff's Contentions

Plaintiff contends that UPS failed to satisfy its obligation to "exercise responsible supervision and control over the customs business that it conducts" by persistently misclassifying imported merchandise in HTSUS subheading 8473.30.9000. (Pl.'s Mot. 14 (quoting 19 U.S.C.

---

[4]Section 641(b)(4) of the Tariff Act of 1930, 19 U.S.C. § 1641(b)(4), requires a customs broker to "exercise responsible supervision and control over the customs business that it conducts." Section 641(d)(1)(C) permits Customs to impose a monetary penalty when a broker "has violated any provision of any law enforced by the Customs Service or the rules or regulations issued under any such provision." 19 U.S.C. § 1641(d)(1)(C).

[5]The broker statute requires that Customs notify a broker prior to enforcing a penalty against it for a violation of the statute. 19 U.S.C. § 1641(d)(2)(A) ("§ 1641(d)(2)(A)").

<u>United States v. UPS Customhouse Brokerage, Inc.</u>                                                                 Page 5
04-00650

§ 1641(b)(4)).)  Plaintiff reminds this Court that "customs business" includes tariff classification. (<u>Id.</u> at 13 (<u>quoting</u> 19 C.F.R. § 111.1 (2006)).)  Despite Customs having provided at least two training courses, instructional materials, informal discussion, consultations, warning letters, and notices of action and despite UPS having represented to Customs that it had corrected the problem, Plaintiff advises that UPS continued to misclassify merchandise in subheading 8473.30.9000.  (<u>Id.</u> at 14.)  Between January 10 and May 10, 2000, Customs identified sixty entries containing imported merchandise allegedly misclassified in subheading 8473.30.9000. (<u>Id.</u>)  Plaintiff reasons that these alleged misclassifications together with UPS's "failure to promptly and effectively address this problem . . . demonstrates a failure to exercise responsible supervision and control over the Customs [sic] business that it conducts, thus warranting monetary penalties."  (<u>Id.</u> at 15.)

     Plaintiff submits that the declaration of Customs employee Lydia Goldsmith is sufficient to establish that UPS misclassified imported merchandise in subheading 8473.30.9000 on the sixty entries between January 10 and May 10, 2000.  (Pl.'s Reply to Def.'s Br. in Opp'n to Pl.'s Mot. for Summ. J. ("Pl.'s Reply") 4-5.)  Plaintiff proffers that "Customs determines whether merchandise incorporates a CRT by either physically inspecting the merchandise, its entry documents, or both."  (<u>Id.</u> at 4.)  As such, Plaintiff stresses that the information contained in Ms. Goldsmith's declaration is "neither new nor prejudicial to UPS."  (<u>Id.</u>)

<u>United States v. UPS Customhouse Brokerage, Inc.</u>                                    Page 6
04-00650

## II.    **<u>Defendant's Contentions</u>**

Defendant contends that Plaintiff failed to establish that the allegedly misclassified imported goods were–in fact–misclassified.  (Def.'s Opp'n 8.)  Defendant contests Plaintiff's use of the Goldsmith declaration as the "sole piece of evidence" supporting the alleged misclassifications because "this 'evidence,' submitted for the first time after the close of discovery, does not establish the absence of a genuine dispute on this issue."  (<u>Id.</u> at 9.)  Defendant predicates that it was denied "the opportunity to test the factual allegations and assertions . . . contained in [the] declaration" during discovery.  (<u>Id.</u>)  Defendant also complains that "several of the Goldsmith allegations are vague and unsupported with respect to the issue of whether the entered merchandise contained cathode ray tubes."  (<u>Id.</u>)  Defendant adds that Plaintiff failed to provide this Court with any evidence "demonstrating whether Customs took any steps to determine whether the merchandise contained a cathode ray tube consistent with subheading 8473.30.9000, whether by physical inspection, seeking confirmation from either the broker, shipper or ultimate consignee, or by any other measures."  (<u>Id.</u> at 10.)  Defendant concludes that "Plaintiff has not even met its burden of demonstrating how the evidence, taken as a whole, demonstrates the absence of a genuine dispute on the issue of whether the entered merchandise was in fact improperly classified as it alleges."  (<u>Id.</u>)

#### JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C.§ 1582(1) (2000).

<u>United States v. UPS Customhouse Brokerage, Inc.</u>                                                                Page 7
04-00650

## STANDARD OF REVIEW

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." USCIT R. 56(c). On a motion for summary judgment, the moving party bears the burden of proving that there is no genuine issue of material fact that would preclude judgment in its favor. <u>SRI Int'l v. Matsushita Elec. Corp. of Am.</u>, 775 F.2d 1107, 1116 (Fed. Cir. 1985). However, the party opposing the motion for summary judgment may not rest on its pleadings. <u>Ugg Int'l, Inc. v. United States</u>, 17 CIT 79, 83, 813 F. Supp. 848 (1993). Rather, the nonmovant must present "specific facts" that establish a genuine issue of triable fact. <u>Id.</u> (quoting <u>Pfaff Am. Sales Corp. v. U.S.</u>, 16 CIT 1073, 1075 (1992)). "[M]ere denials or conclusory statements are not sufficient." <u>Mingus Constructors, Inc. v. United States</u>, 812 F.2d 1387, 1390-91 (Fed. Cir. 1987). Further, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion," <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962), and the court "must resolve all doubt over factual issues in favor of the party opposing summary judgment" <u>SRI</u>, 775 F.2d at 1116.

## DISCUSSION

The gravamen of this case is whether the allegedly misclassified goods that were the basis for the disputed penalties contained a CRT. For Plaintiff to prevail on its Motion, the goods in question must <u>not</u> have contained a CRT and were, therefore, misclassified in HTSUS subheading 8473.30.9000. If the goods were correctly classified, there could be no failure to

<u>United States v. UPS Customhouse Brokerage, Inc.</u>                                                      Page 8
04-00650

"exercise responsible supervision and control." 19 U.S.C. § 1641(b)(4).  And, without a failure to exercise responsible supervision and control, there could be no penalty.

By its very existence in the HTSUS, this Court can presume that some goods are correctly classifiable in the disputed subheading: 8473.30.9000.  Indeed, one Customs official confirms this to be true.  (<u>See</u> Decl. of Daniel J. Piedmonte ¶ 6, Ex. A to Pl.'s Mot. in Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Opp'n"))  Thus, it would be improper for Customs–without further inquiry–to automatically reject the use of tariff subheading 8473.30.9000 and penalize brokers for applying it.  Indeed, Customs admits that "HTSUS subheading 8473.30.9000 was <u>rarely</u> applicable from 1996 through 2002 as it required that merchandise incorporate a CRT."  (Pl.'s Reply 10.)  Rarely is not never.

However, Plaintiff offers little in the way of specific evidence to support its claim that the imported merchandise that gave rise to the penalties did not in fact contain a CRT and was, therefore, misclassified.  As Defendant notes, the only support for the misclassification claim is the bare, self-serving Goldsmith declaration.[6]  (Pl.'s Mot. Ex. A.)  Plaintiff did not provide this Court with samples of the allegedly misclassified merchandise.  Neither did Plaintiff furnish this Court with descriptions of the merchandise that UPS allegedly misclassified on sixty entries between January 10 and May 10, 2000.  Further, Plaintiff did not submit evidence concerning the methods Customs undertook to verify that the specific merchandise in question did not contain a CRT.  Plaintiff's statement that "Customs determines whether merchandise incorporates a CRT

---

[6]This Court is troubled by Plaintiff's failure to disclose Ms. Goldsmith as a material witness prior to the close of discovery in this case.  However, there is no motion to strike the Goldsmith declaration before this Court.  Accordingly, this Court will consider the Goldsmith declaration and weigh it in the context in which it was presented.

<u>United States v. UPS Customhouse Brokerage, Inc.</u>  Page 9
04-00650

by either physically inspecting the merchandise, its entry documents, or both" (Pl.'s Reply 4) is both generic and conclusory and does not inform this Court as to the specific efforts Customs undertook to determine whether the merchandise classified on the sixty disputed entries contained a CRT.[7]

Plaintiff did submit copies of Notices of Action in which Customs notified UPS that it had changed the classification of entered merchandise from subheading 8473.30.9000 to the respective correct classification. (<u>See</u> Pl.'s Opp'n Ex. F; Pl.'s Mot. Ex. E.) However, each of these Notices of Action occurred outside the relevant period of January 10 to May 10, 2000. Additionally, Plaintiff proffered several Informed Compliance Notices that Customs sent to UPS advising the broker of classification errors involving tariff subheading 8473.30.9000. (<u>See</u> Pl.'s Mot. Ex. E.) These, too, were outside the relevant period. As this Court on summary judgment "must view the evidence in a light most favorable to the nonmovant and draw all reasonable inferences in its favor," <u>SRI</u>, 775 F.2d at 1116, these documents together in and of themselves do not prove the alleged acts of misclassification at issue here.

Defendant, while careful not to assert that the goods contained a CRT and were properly classified, alleges that Plaintiff failed to meet its burden of proof that the goods were misclassified. The correct classification of the sixty disputed entries is a material fact; without misclassification, there can be no penalty. Whether or not the goods contained a CRT is a fact not presently verifiable on the record before this Court and is disputed by Defendant. Therefore,

---

[7] For instance, it would have been helpful for this Court to have a description of the allegedly misclassified goods and to know whether Customs inspected the goods, issued a Request for Information (Customs and Border Protection Form 28), or issued a notice to redeliver.

<u>United States v. UPS Customhouse Brokerage, Inc.</u>                                         Page 10
04-00650

this Court holds that Plaintiff failed to meet its burden on summary judgment to establish that there is no genuine issue of material fact as to whether the allegedly misclassified goods contained a CRT and were, therefore, misclassified.  Plaintiff will have the opportunity at trial to prove its case.

While this Court acknowledges Defendant's other challenges to Plaintiff's case, having found at least one genuine issue of material fact in dispute, this Court need not delve further into Defendant's arguments.  These issues, likewise, may be taken up at trial.

## Conclusion

This Court—having determined that there is a genuine issue of material fact in dispute concerning the correct classification of the subject imported goods—denies Plaintiff's Motion for Summary Judgment.

　　　　　　　　　　　　　　　　　　　　　　　　　  /s/ Gregory W. Carman　　　　　
　　　　　　　　　　　　　　　　　　　　　　　　Gregory W. Carman

Dated: July 2, 2007
　　　　New York, New York

## NOTICE OF ENTRY AND SERVICE

      This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

      Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

      or

      Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

      Tina Potuto Kimble
      Clerk of the Court

Date: _____     By: _____
                                                                 Deputy Clerk